UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
IN RE:                        .    Misc. Pro. No. 22-00401-MG
                              .
MATTER OF CERTAIN CLAIMS .
AND NOTICING AGENTS'          .
RECEIPT OF FEES IN            .    One Bowling Green
CONNECTION WITH               .    New York City, NY 10004
UNAUTHORIZED ARRANGEMENTS.
WITH XCLAIM INC.              .
                              .    October 26, 2022
. . . . . . . . . . . . ..         2:00 p.m.
```

TRANSCRIPT OF IN COURTROOM HEARING RE:
ORDER TO SHOW CAUSE
(DOC## 17, 24, 25, 26, 27)
BEFORE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY COURT CHIEF JUDGE

APPEARANCES:

For XClaim Inc.:          Hogan Lovells US LLP
                          By:  JOHN DOUGLAS BECK, ESQ.
                          390 Madison Avenue
                          New York, NY 10017

                          Hogan Lovells US LLP
                          By:  KEVIN J. CAREY, ESQ.
                          1735 Market Street, 23rd Floor
                          Philadelphia, PA 19103


Audio Operator:           K.S.

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609)586-2311    Fax No. (609)587-3599**

APPEARANCES (Cont'd):

For the U.S. Trustee:     U.S. Department of Justice
                          Office of the U.S. Trustee
                          By:  ANDREA BETH SCHWARTZ, ESQ.
                               ANNIE WELLS, ESQ.
                          U.S. Federal Office Building
                          201 Varick Street, Suite 1006
                          New York, NY 10014

                            **- - -**

1          THE COURT:  Please be seated.  All right.  We're here

2   this afternoon in connection with the order to show cause why

3   Xclaim account holder should not be sanctioned for publically

4   filing personally identifiable information of federal judges

5   and other government officials.  The order was entered on

6   September 23rd, 2002.  Xclaim filed a response to the order to

7   show cause, and the Office of the U.S. Trustee likewise did a

8   filing.

9          I have the list of appearances in front of me.  Mr.

10  Carey, are you going to begin?

11         MR. CAREY:  Yes, Your Honor.  Good afternoon, Your

12  Honor, and may it please the Court.  Kevin Carey, Hogan

13  Lovells, representing Xclaim Inc., along with my colleague John

14  Beck seated at counsel table.

15         Your Honor, we are keenly aware of concerns by this

16  Court and others related to the propriety of disclosures made

17  or not made by various claims agents, but this is not the

18  narrow issue before the Court today.

19         While Xclaim itself was not directly asked to

20  participate in the process fixed by the Court's August 25th

21  order, it felt compelled to defend its virtue as a result of

22  certain ad hominem statements made about Xclaim, directly

23  implicating its business practices and business model.  To this

24  end, after consultation with counsel, Xclaim filed a response

25  with this court on September 22nd in an effort to describe in

detail the extensive due diligence Xclaim conducted in developing a business plan that worked within the current system. I'll give a brief description of Xclaim's business model in just a moment.

Unfortunately, in an effort to defend its virtue, Xclaim has obviously concerned this Court that personally identifiable information, PII, of certain government officials may have been improperly disclosed. As a result, the clerk of court has blocked public access to Xclaim's letter.

Consequently, by virtue of the Court's September 23rd order, we appear here today. As ordered, both Matthew Sedigh, Xclaim CEO, and Ryan Vollenhall, Xclaim's operations managers, are present and available to respond to any questions the Court may have. Also present is Andrew Glantz, Xclaim's chief strategy officer.

As further ordered, a response by Xclaim through counsel was filed on October 6th, and October 13th the U.S. Trustee accepted the Court's invitation to respond.

What is Xclaim? Xclaim operates a web-based platform for buying and selling bankruptcy claims that uses the latest technology to streamline trading and deliver real time guidance and insights. The company enables its customers to compare offers, negotiate terms and securely consummate transactions.

Xclaim provides news and research, pricing data that includes published bid-ask pricing, and last trade pricing for

active cases, and trading activity data, including disclosed
identities of all trading parties, and trading volumes and
trends to market participants updated daily.

The Xclaim marketplace aggregates claims from across
all U.S. bankruptcy cases in a centralized, searchable
location, reducing transaction costs for all parties.

To be clear, Xclaim does not buy claims on its own
account. Xclaim generates revenue from commissions to
institutional claims buyers upon successful closing of a claim
transfer. For most transactions commissions are equal to one
percent of the face value of the claims traded in the primary
market and .5 percent in the secondary market.

So Xclaim is the only platform where creditors can
access free resources to evaluate their liquidity options,
compare offers from multiple buyers, and access real time
insights into trading activity in their case.

Let me now turn, Your Honor, to the concern raised by
the Court. The so called PII in Xclaim's submission is
entirely or almost entirely public, already known and freely
available online.

THE COURT: Let me ask you about that, Mr. Carey.
You've obviously searched the Internet and found e-mail
addresses for judges or the others whose e-mail addresses were
disclosed in Xclaim's filing. Does the fact that my e-mail
address may appear in some place on the Internet exempt it from

1 the protection that Section 101(41A) of the Bankruptcy Code

2 provides in defining personally identifiable information?

3 　　　　MR. CAREY:  Your Honor, the difficulty as we

4 explained in our response is that we don't know.  We're able --

5 we were unable to determine whether any statute, rule or

6 regulation was violated by disclosure of this information.

7 　　　　THE COURT:  Well, Mr. Carey, Bankruptcy Code Section

8 101(41A) provides "The term personally identifiable information

9 means (A)(iii) an electronic address, including an e-mail

10 address of such individual."  Are e-mail addresses of

11 individuals protected by Section 101(41A) of the Bankruptcy

12 Code?  That's the statute that applies in this court.

13 　　　　MR. CAREY:  Well, that's the definition, but we have

14 to look to the rules or other sources to find out --

15 　　　　THE COURT:  The fact that -- I'd like a direct answer

16 to the question I asked, and the question -- the fact that my

17 e-mail address, my court e-mail address, may appear through a

18 diligent search of the Internet and hasn't been removed yet,

19 does that mean it's no longer subject to whatever protection

20 the Bankruptcy Code provides for an individual's e-mail

21 address, yes or no?

22 　　　　MR. CAREY:  Well, let's assume that it qualifies as

23 PII.

24 　　　　THE COURT:  And the answer to the question is?

25 　　　　MR. CAREY:  There's no violation unless there's

1 something that says it cannot be disclosed, or should not be

2 disclosed, or conditions to disclosure.  I could not find it in

3 the rules, either under Bankruptcy Rule --

4 THE COURT:  So what do you think the basis for this

5 Court -- for parties seeking to seal any court filings that

6 include individuals' e-mail addresses or physical addresses?

7 Where do you think that derives from?

8 MR. CAREY:  Well, the reluctance derives from the

9 concern about possible theft of financial information or

10 identity theft, but --

11 THE COURT:  Or being harassed?

12 MR. CAREY:  Or being harassed.

13 THE COURT:  And your position is there's nothing in

14 the Bankruptcy Code or the court's rules that makes

15 individuals' e-mail addresses protected personally identifiable

16 information, that's your position?

17 MR. CAREY:  Except in the case of a minor under the

18 Bankruptcy Rule.

19 THE COURT:  Do you have any authority for that?  Do

20 you have any authority for the position that you believe that

21 nothing protects adults' e-mail addresses from being disclosed

22 or Social Security numbers or anything else?

23 MR. CAREY:  Social Security numbers cannot be

24 disclosed.

25 THE COURT:  And you believe that physical --

1          MR. CAREY:  Tax --

2          THE COURT:  You believe that physical addresses and

3  e-mail addresses of individuals can be freely disclosed by your

4  client in any filings with the court?

5          MR. CAREY:  Sure, Your Honor.  We're talking about

6  information that was already publically available.

7          THE COURT:  You think the fact that you can search

8  the Internet and find my e-mail address or Judge Mauskopf's e-

9  mail address, that if it appears once in some place on the

10  Internet, it's no longer protected information?

11          MR. CAREY:  Well, if I perceive the Court's concern

12  correctly, it would be a security risk in the case of a Court.

13          THE COURT:  Could you answer my question?

14          MR. CAREY:  I don't -- it's not otherwise protected

15  by anything that we could find.

16          THE COURT:  And so your client is free to just

17  publish -- as everybody in this courtroom, they can publish --

18  they can file something on ECF with people's physical addresses

19  and e-mail addresses without concern about any sanction against

20  them?

21          MR. CAREY:  So let me answer --

22          THE COURT:  Answer that question directly.

23          MR. CAREY:  It has to be considered in this context.

24  In this --

25          THE COURT:  Answer my question directly.  Is your

1  client free to file on ECF the list of every person in this

2  courtroom, their physical and e-mail addresses, yes or no?

3         MR. CAREY:  I can't answer that.  It would be

4  dependent upon the circumstances, Your Honor.  But if you want

5  to turn to this context, the context was Xclaim responding to

6  disparaging information filed publically by one of the claims

7  agents.

8         THE COURT:  Let me ask you this question.  Xclaim is

9  not a party in interest in this matter, is it?

10        MR. CAREY:  Well, it's arguably --

11        THE COURT:  Well, you --

12        MR. CAREY:  -- it might be.

13        THE COURT:  The filing says they're not seeking any

14  relief.

15        MR. CAREY:  That's correct.

16        THE COURT:  Okay.  They didn't file -- they're not

17  named as a party in the miscellaneous matter.  They didn't file

18  a motion to intervene, is that correct?

19        MR. CAREY:  That's correct.  Let me explain it this

20  way.  What's happened with the Court's concern concerning

21  disclosures by claims agents has had a direct impact on Xclaim.

22        THE COURT:  So why didn't they file -- if you believe

23  -- if they believe they could properly intervene in this

24  procedure -- proceeding, why didn't they file a motion to

25  intervene?

1    MR. CAREY:  Your Honor, I can't answer that.  We were

2  not representing Xclaim at that time.

3    THE COURT:  What PACER account did they use to make

4  the filing -- filings that they made in this miscellaneous

5  proceeding?

6    MR. CAREY:  The Court pointed out correctly that

7  Xclaim used its account.

8    THE COURT:  And they did have free access to file

9  whatever they wanted using that account?

10    MR. CAREY:  Your Honor, I can't say that they did.

11    THE COURT:  Did you review the terms under which they

12  were granted limited right to access to the PACER system in

13  this court?

14    MR. CAREY:  Yes, Your Honor.

15    THE COURT:  And does that limited right that they

16  were granted include filing anything in this proceeding?

17    MR. CAREY:  Arguably, it does not.

18    THE COURT:  So you agree that they didn't have

19  authority to file in this miscellaneous proceeding using their

20  limited access to the PACER system?

21    MR. CAREY:  Well, I take it it's clear that the Court

22  believes that they should not have done so.

23    THE COURT:  I asked you whether you agree that they

24  did not have the authority under their limited access rights to

25  the PACER system to make the filing they did file in this

1    matter.

2              MR. CAREY:  It does not appear so.

3              THE COURT:  Okay.  Go ahead with your argument.

4              MR. CAREY:  All right.  Your Honor, I will skip to

5    the part of my remarks which were designed to describe which

6    we've got in our response, you know, where these addresses can

7    be found publically.

8              THE COURT:  Well, you still didn't answer my

9    question.  Do you believe that the fact that if you search the

10   Internet you could find my e-mail or the court e-mail address

11   or Judge Mauskopf's e-mail address?  Does that fact alone

12   exempt those e-mail addresses from protection that would be

13   provided?

14             MR. CAREY:  Your Honor, I can look, as we did in the

15   response, to Rule 9037 and to Federal Rule 5.2 of the Rules of

16   Civil Procedure.  None of them exclude the information that

17   Xclaim added in its submission.

18             THE COURT:  Go ahead with your argument.

19             MR. CAREY:  Rule 9037 requires redactions only under

20   the following limited circumstances, where the filing contains

21   an individual's Social Security number, taxpayer ID number, or

22   birth date, the name of an individual other than the debtor

23   known to be identified as a minor, or a financial account

24   number.

25             Rule 5.2 of the Federal Rules of Civil Procedure

1  imposes filing restrictions on that same limited set of

2  personal identifiers, but not others.  We are unaware of any

3  applicable statute or rule that Xclaim's submission exhibits

4  violate or that provide the documents containing contact

5  information for government officials is in any way wrongful.

6          THE COURT:  So your position is they have absolutely

7  no restrictions whatsoever about filing on ECF with the names

8  of anybody they wish to name with their physical and e-mail

9  addresses, that's your position?

10          MR. CAREY:  My position is nothing that they

11  disclosed --

12          THE COURT:  Could you answer my question?

13          MR. CAREY:  I'm sorry.  Will you repeat the question,

14  Your Honor?

15          THE COURT:  Is it your position that Xclaim is free

16  to file on ECF the names of any individuals, their physical

17  addresses and e-mail addresses that they choose to file?

18          MR. CAREY:  So long as they're not violative of 9037

19  or the Rules of Civil Procedure or some other statute.

20          THE COURT:  All right.  Go on.

21          MR. CAREY:  The Xclaim submission, Your Honor, was

22  made in good faith to defend itself against gratuitous

23  criticism by Kroll.  Xclaim is greatly concerned that it's

24  already suffered reputational and financial harm as a result of

25  these proceedings.  All agreements with claims agents have been

1 terminated.

2        Finally, let's address sanctions.

3        THE COURT: Let me ask you this question first.

4        MR. CAREY: Yes, sir.

5        THE COURT: On Page 10 of your filing, which is at

6 ECF Docket Number 25, on Page 10 it reads as follows in the

7 last paragraph, "Specifically, Xclaim consulted with its

8 outside counsel, Latham & Watkins LLP, who reviewed and

9 provided comments on drafts of the Xclaim submission before it

10 was filed. Xclaim and its counsel specifically discussed

11 redactions of exhibits to avoid disclosing attorney-client

12 communications, and Xclaim's counsel never indicated that any

13 redactions were required to protect the confidentiality of any

14 government employees or their contact information or otherwise

15 raise any concerns about publically filing Xclaim's e-mails

16 with government employees." Are you relying on advice of

17 counsel defense?

18        MR. CAREY: Yes, sir.

19        THE COURT: Who at Latham & Watkins was the lawyer

20 who provided the advice?

21        MR. CAREY: Kim Posin.

22        THE COURT: Is she married to one of your -- one of

23 the principals of your client?

24        MR. CAREY: Former principal, yes.

25        THE COURT: And does Xclaim have an engagement letter

1  with Latham & Watkins?

2          MR. CAREY:  Yes, but it's been terminated.  The

3  engagement has been terminated.

4          THE COURT:  When was it terminated?

5          MR. CAREY:  Very recently.

6          THE COURT:  When?

7          MR. CAREY:  At around the time we were engaged as

8  counsel.

9          THE COURT:  And is Ms. Posin a bankruptcy lawyer?

10         MR. CAREY:  I understand her to be.

11         THE COURT:  Are you sure?

12         MR. CAREY:  I'm not sure, no.  I know --

13         THE COURT:  Then ask your clients.

14         MR. CAREY:  Yes.

15         THE COURT:  And is she familiar -- do you know

16 whether -- did she consider Section 101(41A) before she

17 rendered advice?  Well, did she render her advice in writing?

18         MR. CAREY:  There were some e-mail exchanges, yes.

19         THE COURT:  I would like those -- since you're

20 relying on advice of counsel as a defense, please produce

21 copies of the e-mail exchanges on which advice was rendered by

22 5 p.m. tomorrow.

23         MR. CAREY:  We will do so.

24         THE COURT:  Go ahead with your argument.

25         MR. CAREY:  Your Honor, at this point I'll stand on

1  the argument that we made in the submission.  It covers the

2  standards which are applicable.

3          THE COURT:  Let me go over this then.  Do you dispute

4  that Xclaim account holder violated the plain language of their

5  e-filing agreements in making its filing in this miscellaneous

6  proceeding?

7          MR. CAREY:  We do not dispute that.

8          THE COURT:  And since Xclaim account holders violated

9  the e-filing agreement, couldn't the clerk simply cancel their

10  ECF accounts under the terms of the e-filing agreement?

11          MR. CAREY:  We do not dispute that, but we would say

12  that that would not be an appropriate sanction to be levied

13  here.

14          THE COURT:  And as I understand it, you don't assert

15  that Xclaim is a party in interest within the meaning of 11

16  U.S.C. 1109(b), correct?

17          MR. CAREY:  So, Your Honor, that's a discussion we've

18  had with our client, and I think arguably they could be

19  considered given how they've been drawn into the concerns that

20  the Court has expressed with the claims agents and the response

21  that was filed that Xclaim felt compelled to respond to.

22          THE COURT:  What is Xclaim's direct financial

23  interest in a proceeding involving potential sanctions against

24  claims agents, none of whom have contracts with Claim?

25          MR. CAREY:  Well, they did at the time, Your Honor,

1  that the issues arose.

2  THE COURT:  At the time they made the filing in this

3  miscellaneous proceeding they had contracts with them?

4  MR. CAREY:  I don't know -- they were all terminated

5  by that time I'm advised.

6  THE COURT:  All right.  So you agree that at the time

7  they made the filing in this proceeding they no longer had

8  contracts with any of the claims agents?

9  MR. CAREY:  That's correct.

10  THE COURT:  Can you provide an example of a case in

11  which a non-party without seeking leave to intervene was

12  permitted to "correct and supplement the record" which is what

13  --

14  MR. CAREY:  Not present -- no, I cannot --

15  THE COURT:  -- Xclaim says at Page 1?

16  MR. CAREY:  -- Your Honor, not presently.

17  THE COURT:  Do you believe that a non-party

18  corporation that is seeking no relief -- see Xclaim submission

19  at Page 5 -- should be permitted to use court filings to rebut

20  what it perceives as negative information that comes to light

21  in the case?

22  MR. CAREY:  Stated generally, no.

23  THE COURT:  Does Xclaim believe that Kroll had stated

24  libelous or -- anything libelous or defamatory in Kroll's

25  submission?

1    MR. CAREY:  Well, it's Xclaim's position that some of

2 the statements made in Kroll's submission were false.

3    THE COURT:  Since you acknowledge that Xclaim

4 violated the plain language of their e-filing agreements, what

5 do you believe is an appropriate sanction to be imposed by the

6 Court?

7    MR. CAREY:  Your Honor, we believe no sanction --

8    THE COURT:  Those limited e-filing agreements

9 specifically provided the clerk could terminate their rights if

10 they misused, which they did.

11    MR. CAREY:  We don't dispute this.

12    THE COURT:  All right.  And so what is an appropriate

13 sanction in your view for their --

14    MR. CAREY:  Your Honor --

15    THE COURT:  -- misusing their PACER rights?

16    MR. CAREY:  For the reasons that we've indicated in

17 the submission and what I've argued today, we believe no

18 sanction is warranted.  This was a -- and as part of the advice

19 of counsel defense, I simply remind the Court that a draft of

20 the submission was reviewed, and the firm knew that Xclaim was

21 going to use its account to make this filing.

22    THE COURT:  Well, I think they probably got bad

23 advice.  If you think -- did they review their e-filing

24 agreement with counsel?

25    MR. CAREY:  I can't answer that.

1    THE COURT:  Ask your clients.

2    MR. CAREY:  Not for this purpose, no.

3    THE COURT:  Is there a writing that terminated

4 Latham's retention?

5    MR. CAREY:  October 3rd, I'm told.

6    (Pause)

7    THE COURT:  You argue in your letter brief that

8 Xclaim lacked the authority to redact e-mail addresses and

9 telephone numbers for government officials.  What's the

10 procedure in this court for filing redacted information and

11 seeking leave to file under seal?

12    MR. CAREY:  Your Honor, that in a way is the irony in

13 one sense of the situation.  Of course in this world the talk

14 is always information should be publically shared.  So we took

15 the position that there was nothing that indicated, as I've

16 argued previously, that should have --

17    THE COURT:  Perhaps you didn't understand my

18 question.  What is the procedure in this court where a party

19 seeks to file redacted information?

20    MR. CAREY:  I don't know.

21    THE COURT:  Bankruptcy Code Section 107(c), (c)(1)

22 provides that the bankruptcy court, for cause, may protect an

23 individual with respect to the following types of information

24 to the extent that the Court finds that disclosure of such

25 information would create undue risk of identity theft or other

1  unlawful injury to the individual or the individual's property.

2  And Subsection (A) of that, any means of identification as

3  defined in Section 1028(d) of Title 18 contained in the paper

4  filed or to be filed in a case under this title.

5       Are you saying that disclosure of individuals' e-mail

6  addresses is not subject to protection under 107(c)(1)?

7       MR. CAREY:  That's correct under these circumstances.

8       THE COURT:  I wrote an opinion a week ago to --

9  within a week ago in <u>Celsius</u> where I permitted redaction of

10  schedules to exclude physical and e-mail addresses of

11  individuals based on 107(c)(1).  Have you read the opinion?

12       MR. CAREY:  No, but I'm aware of the issue.  It's

13  been pending for several years now in a variety of courts.

14       THE COURT:  Well, it was pending in this court, and I

15  ruled that I permitted redaction of physical addresses and e-

16  mail addresses of individuals, not of corporations, but of an

17  individual under 107(c)(1).

18       MR. CAREY:  Yeah, but under circumstances different

19  from these.

20       THE COURT:  Well, why are the circumstances

21  different?  You don't think that judges face being bombarded

22  with e-mails or threats if they're -- we don't publish -- you

23  know this very well, you don't publish judges' e-mail

24  addresses.

25       MR. CAREY:  Well, judges' court e-mail addresses are

1  widely known.

2          THE COURT:  So you think it's fair game for anybody

3  who wants to just bombard judges with e-mails addressed to

4  their individual e-mail addresses?

5          MR. CAREY:  I do not feel it's fair for judges to be

6  bombarded.

7          THE COURT:  All right.  Anything else you want to add

8  before I ask the U.S. Trustee?

9          MR. CAREY:  No, Your Honor.  Thank you.

10          THE COURT:  Thank you.  Ms. Wells.

11          MR. CAREY:  I'm sorry.  There is one other thing.

12          THE COURT:  Yes, go ahead.

13          MR. CAREY:  You asked that the e-mail exchanges be

14  submitted to the Court.  Would you like them in chambers or

15  would you like them filed?  And if you would like them to be

16  filed, I wonder whether it would be better to file them under

17  seal?

18          THE COURT:  Well, why is that?  You've waived -- your

19  client has waived privilege by asserting a reliance on advice

20  of counsel defense.

21          MR. CAREY:  We are well aware of what the consequence

22  of raising that defense is.  We're not concerned about our own

23  privacy.  We have no desire to publically embarrass any other

24  law firm.

25          MR. BECK:  And, Your Honor, the same e-mail --

1          THE COURT:  You have to identify yourself when you're

2    speaking.

3          MR. BECK:  John Beck from Hogan Lovells on behalf of

4    Xclaim.  The same e-mail addresses that Your Honor is concerned

5    with are also contained within those e-mails because drafts are

6    attached.  So we just want to make sure we don't do it again

7    and file those again.

8          THE COURT:  Well, the procedure to follow is to file

9    -- redact as you believe appropriate and file a motion to seek

10   to have the documents, you know, filed under seal except for

11   the redaction.

12          So exclude -- you should -- you definitely -- look,

13   we impounded -- as soon as we saw that Xclaim did an

14   unauthorized filing that included e-mail addresses of numerous

15   judges and federal officials, access to the document was

16   blocked.  And so you definitely shouldn't include that

17   information, but you need to file a motion to file -- you know,

18   to file it under seal, and I'll --

19          MR. CAREY:  Your Honor --

20          THE COURT:  -- evaluate it.

21          MR. CAREY:  -- would you consider under the

22   circumstances an oral motion today to that effect?

23          THE COURT:  I'm sorry?

24          MR. CAREY:  Would you consider an oral motion today

25   to that effect?

1          THE COURT:  Typically, Mr. Carey, when a party seeks

2     to file redacted documents, they file the redacted documents.

3     They file along with it a motion to file under seal.  They

4     submit to the Court the unredacted documents.  The Court

5     reviews them and concludes whether any additional information

6     should be publically disclosed or not.  That's the procedure

7     that I followed for years.

8          With respect to unredacted documents, if you contact

9     -- and any filing has to be made by you or counsel of record,

10    not by --

11         MR. CAREY:  Understood.

12         THE COURT:  -- your client --

13         MR. CAREY:  No.

14         THE COURT:  -- using their limited access.

15         MR. CAREY:  That message has been clearly received.

16         THE COURT:  Right.  As you're probably aware, because

17    of concerns about inappropriate access to or hacking of courts,

18    anything that -- in this court where a party seeks to file it

19    under seal, you contact the clerk's office.  We're using an

20    application called Box where you upload the documents to Box.

21    It's an encrypted channel.  They don't go on the court's ECF

22    server, and I have access to it, and my law clerks will have

23    access to it.

24         So if you confer with the clerk's office, they'll

25    explain the procedure that's followed.  You should remove the

personal identifiers, the e-mail addresses of the officials,
which was the issue that brought this whole matter here, file
what you believe is appropriately filed in redacted form, file
a motion under 9018 and 107 for leave to file redacted
documents, and I'll rule on it.  Okay.

MR. CAREY:  Very well.  Thank you.

THE COURT:  All right.  Thank you.

MS. WELLS:  Your Honor.

THE COURT:  Why don't you approach the podium.  Thank
you.

MS. WELLS:  For the record, Annie Wells on behalf of
the United States Trustee.  I just wanted to close the point
before we move on, so the U.S. Trustee's Office will also
receive unredacted copies?

THE COURT:  Yes, unredacted copies should go to your
office.

MS. WELLS:  Okay.  Thank you so much.  Thank you.
Again, good afternoon, Your Honor.  Annie Wells on behalf of
the United States Trustee.

As Your Honor noted at the beginning of the
proceedings, we did file a responsive statement and reservation
of rights at the Court's request with respect to the Xclaim
order to show cause.  As stated in our papers, our position is
that we do believe the Court has the authority and discretion
to -- certainly to determine if any of the filings posed

1  security issues for the Court, and, if so, to fashion

2  appropriate remedies that it sees fit.

3       We also noted in our papers that we have reviewed the

4  ECF filing agreements and had seen, in fact, the limited scope

5  of the ECF user privileges and have noted that the pleadings

6  were filed in their I guess individual capacities of ECF user

7  agreement.

8       And with that, Your Honor, I don't know if you have

9  any questions for us, but, you know, our papers speak for

10 themselves.

11      THE COURT:  I guess the only question I would have is

12 whether you can shed any light on your view about the

13 disclosure of physical addresses and e-mail addresses of

14 individuals?

15      MS. WELLS:  We're often on the other side of similar

16 arguments, Your Honor.  I would reiterate, as we did in our

17 papers, that it is definitely -- as Your Honor noted, for

18 example, in Celsius, it is something that courts determine all

19 the time whether disclosure of information, you know, poses

20 privacy or security concerns, certainly with respect to, you

21 know, judges or court staff information.

22      So, again, we would just reiterate that it's

23 certainly within this Court's authority to make that

24 determination as to whether something is violative of PII.

25      THE COURT:  Okay.  Thank you, Ms. Wells.

1          MS. WELLS:  Thank you, Judge.

2          THE COURT:  Mr. Carey, do you have any further reply?

3          MR. CAREY:  No, Your Honor.

4          THE COURT:  All right.  The Court is going to take

5    the matter under submission and in due course will issue an

6    opinion or an order to dispose of it.  All right.  We are

7    adjourned.

8          MS. WELLS:  Thank you, Your Honor.

9                         *  *  *  *  *

10                  **C E R T I F I C A T I O N**

11          I, COLETTE MEHESKI, court approved transcriber,

12   certify that the foregoing is a correct transcript from the

13   official electronic sound recording of the proceedings in the

14   above-entitled matter, and to the best of my ability.

15

16

17   /s/ Colette Meheski

18   COLETTE MEHESKI

19   J&J COURT TRANSCRIBERS, INC.   DATE:   November 1, 2022

20

21

22

23

24

25